UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LI Z. FENG, YUE X. HUANG, FENG X. LIU,
YU P. LIU, SHAO N. MENG and MEI S. YUEN,

                  Plaintiffs,

        -  against  -

HEALTHFIRST HEALTH PLAN, INC.,
HF MANAGEMENT SERVICES, LLC,
DOE MANAGED LONG TERM CARE PLAN,
and SCHAROME CARES, INC.,

                  Defendants.

**COMPLAINT**
**(Jury Trial Demanded)**

**CIV.**

      Plaintiffs Li Z. Feng, Yue X. Huang, Feng X. Liu, Yu P. Liu, Shao N. Meng and Mei S. Yuen, by their attorneys, The Legal Aid Society and Kasowitz Benson Torres LLP, state the following:

## INTRODUCTION

      1.    Personal care aides, sometimes referred to as home health aides, serve a critical societal need, providing live-in care to elderly, vulnerable and often disabled Medicaid recipients. That care includes bathing, diapering, incontinence care, dressing and cleaning assistance, and empowers thousands of Americans to live and age independently in their homes and community.

      2.    Personal care aides who work 24-hour shifts must be paid for each hour worked, unless they are scheduled to receive, and are actually afforded, eight hours of sleep each night (five of which must be continuous), and three hours for meals and breaks.

      3.    Plaintiffs are personal care aides who worked multiple consecutive 24-hour shifts each week, caring around the clock for Defendants' elderly and infirm Medicaid patients. They

were not scheduled for, nor did they actually receive, eight hours of sleep each night, five hours of continuous sleep and/or three hours for meals and breaks during their shifts.

4.      Nonetheless, Plaintiffs were paid as if they worked only 13 hours in each 24-hour shift, and thus not only improperly were denied overtime compensation, but were paid well below the minimum wage.

5.      Healthfirst Health Plan, Inc. and HF Management Services, LLC (together, "Healthfirst") and Doe Managed Long Term Care Plan (hereinafter, the "MLTC Defendants") are Managed Long Term Care Plans ("MLTCs") that contract with the State of New York to provide personal care services to Medicaid patients, largely through the use of personal care aides.  The MLTC Defendants provided personal care services to Medicaid patients by contracting for Plaintiffs' services through Scharome Cares, Inc. ("Scharome").

6.      At all relevant times, one or more Defendants employed and/or jointly employed one or more Plaintiffs under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

7.      As joint employers, Defendants have the right to control and in fact do control the hours, hourly pay, duties, assignments and schedules of Plaintiffs.

8.      The MLTC Defendants made the key decisions that determined the terms and conditions of Plaintiffs' employment, including their pay, work and workplace conditions. Among other things, the MLTC Defendants determined: (i) whether Plaintiffs would be paid for 13 or 24 hours for each shift; (ii) whether Plaintiffs would be eligible for overtime; (iii) whether Plaintiffs had adequate living conditions at the patients' homes; and (iv) the scope, amount and frequency of care provided by Plaintiffs.

9.      Scharome implemented the MLTC Defendants' decisions. It hired Plaintiffs, assigned them work, established their work schedules, supervised them, and paid them within the parameters set by the MLTC Defendants.

10.     Defendants knew or should have known that Plaintiffs had been assigned to patients who required continuous care, meaning Plaintiffs would not receive adequate sleep and breaks. Defendants exploited Plaintiffs' kindness, decency and humanity by compelling them to work multiple days straight, without properly scheduled sleep times or adequate sleeping arrangements, for inadequate pay.

11.     Despite the adversity, Plaintiffs provided quality care and supervision to their patients. Plaintiffs remained at their patients' continuous disposal, performing, among other things, diapering, incontinence care, dressing and cleaning throughout the night. If Plaintiffs slept, it was inconsistent, interrupted and often at their patients' bedsides or in their living rooms.

12.     Defendants violated the law.  Their pay practices violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by failing to pay Plaintiffs (1) the statutorily mandated minimum wage rate for all compensable time and (2) overtime pay at not less than one and one-half (1.5) times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek.

13.     Their pay policies also violated the NYLL and applicable regulations by failing (1) to pay Plaintiffs "spread of hours" premiums and (2) to provide Plaintiffs with lawfully required notices of pay rates and pay statements.

14.     They also failed to pay Plaintiffs the minimum wage required by the New York Home Care Worker Wage Parity Act ("Wage Parity Act").

15.     Plaintiffs therefore seek unpaid wages, compensatory damages, liquidated damages, pre-judgment and post-judgment interest and attorneys' fees and costs.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 29 U.S.C. § 201 et seq., 29 U.S.C. § 216 and 28 U.S.C. § 1331.

17.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

18.     Venue is proper in this Court under 28 U.S.C.§ 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district

## PARTIES

**The Plaintiffs**

19.     Plaintiff LI Z. FENG is a 60-year old woman who resides in Brooklyn, New York.  Ms. Feng was employed as a personal care aide by Scharome, and upon information and belief, jointly by at least one of the MLTC Defendants, from approximately February 2018 to approximately July 2019.

20.     Plaintiff YUE X. HUANG is a 54-year old woman who resides in Staten Island, New York.  Ms. Huang was employed as a personal care aide by Scharome and, upon information and belief, at various times, jointly by Healthfirst, from approximately May 2017 until approximately October 2019.

21.     Plaintiff FENG X. LIU is a 68-year old woman who resides in Brooklyn, New York.  Ms. Liu was employed as a personal care aide by Scharome, and upon information and belief, jointly by at least one of the MLTC Defendants from October 2013 until March 2014.

22.    Plaintiff YU P. LIU is a 66-year old woman who resides in Staten Island, New York.  Ms. Lu was employed as a personal care aide by Scharome, and upon information and belief, jointly by at least one of the MLTC Defendants, from September 2015 until June 2017.

23.    Plaintiff SHAO N. MENG is a 63-year old woman who resides in New York, New York.  Ms. Meng has been employed as a personal care aide by Scharome, and upon information and belief, at various times, jointly by Healthfirst, since approximately September 2014.

24.    Plaintiff MEI S. YUEN is a 63-year old woman who resides in Brooklyn, New York.  Ms. Yuen was employed as a personal care aide by Scharome, and upon information and belief, jointly by at least one of the MLTC Defendants, in or about 2012 for approximately three months.  In or about September 2013, Ms. Yuen went back to work for Scharome, and upon information and belief, at least one of the MLTC Defendants, and continues to be employed by Scharome, and upon information and belief, jointly by at least one of the MLTC Defendants.

**The Defendants**

25.    Defendant HEALTHFIRST HEALTH PLAN, INC. is a New York corporation that manages services to New York state enrollees of both Medicaid and Medicare.  Upon information and belief, Healthfirst Health Plan, Inc. administers Healthfirst CompleteCare, a MLTC that manages personal care services to Medicaid recipients who are also enrolled in Medicare.  Upon information and belief, it employed Yue X. Huang, Shao N. Meng, and one or more of the other Plaintiffs.  It maintains its principal place of business at 100 Church Street, New York, New York.

26.    Defendant HF MANAGEMENT SERVICES, LLC is a New York corporation and directly or indirectly owns and controls Healthfirst Health Plan, Inc.  Upon information and

belief, HF Management Services, LLC administers Healthfirst CompleteCare and Senior Health Partners, both of which provide and/or manage personal care services to Medicaid recipients. Upon information and belief, it employed Yue X. Huang, Shao N. Meng, and one or more of the other Plaintiffs. It maintains its principal place of business at 100 Church Street, New York, New York.

27.     Defendant DOE MLTC is one or more corporations that administer MLTCs in New York City provide and/or manage personal care services to Medicaid recipients, and which jointly employed one or more of the Plaintiffs with Scharome. The identities of DOE MLTC are currently unknown to Plaintiffs.

28.     Defendant SCHAROME CARES, INC. is a New York corporation that specializes in home care for the elderly. It employed all of the Plaintiffs. Upon information and belief, Scharome operates and does business as Scharome Cares, with a business address listed as 1729 East 12th Street, 3rd Floor, Brooklyn, New York.

29.     At all times herein stated, Defendants are and have been an employer within the meaning of 29 U.S.C. § 203(d) and 203(g).

30.     At all times herein stated, Defendants are and have been an enterprise within the meaning of 29 U.S.C. § 203(r).

31.     At all times herein stated, Defendants have been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that

said enterprise has and has had an annual gross volume of sales made or business done of not less than $500,000.

32.    At all times hereinafter mentioned, Plaintiffs, who were employed in domestic service in households, were individual employees engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207 and as defined by 29 U.S.C. § 202(a).

## STATEMENTS OF FACTS

**Defendants' Obligations as Medicaid Contractors**

33.    Upon information and belief, the MLTC Defendants receive Medicaid funding from the New York State Department of Health ("NYS DOH") to provide personal care services to eligible New Yorkers.

34.    Upon information and belief, the MLTC Defendants assess and authorize Medicaid recipients ("patients") to receive the appropriate level of personal care services.

35.    Upon information and belief, the MLTC Defendants complete a social assessment for each of their patients, which includes an evaluation of whether the patient's home has adequate sleeping accommodations for a personal care aide.

36.    Upon information and belief, the MLTC Defendants complete a nursing assessment for each of their patients, which evaluates whether the personal care aide would be likely to obtain, on a regular basis, five hours daily of uninterrupted sleep during an eight hour period of sleep as well as three hours of meal breaks.

37.    Upon information and belief, the MLTC Defendants make the determination of whether to authorize the provision of continuous care by more than one personal care aide for patients who need assistance for more than 16 hours in a calendar day with such frequency that a live-in 24-hour personal care aide would be unlikely to obtain, on a regular basis, five hours

7

daily of uninterrupted sleep during the aide's eight hour period of sleep and three hours of time for meal breaks.

38.     Upon information and belief, the MLTC Defendants make the determination to authorize the provision of "live-in 24-hour" care by one personal care aide for each of their patients who, while still requiring 24-hour assistance, have needs that would permit a live-in 24-hour personal care aide to obtain, on a regular basis, five hours daily of uninterrupted sleep during the aide's eight hour period of sleep.

39.     Upon information and belief, the MLTC Defendants develop a plan of care in collaboration with their patients or their patients' representatives/family members/caretakers that specifies the types, scope, amount and frequency of assistance that will be delivered as part of the person centered service plan.

40.     Upon information and belief, the MLTC Defendants forward the plan of care to their patients and/or their patients' representatives as well as any agencies, such as Scharome, providing the personal care services under subcontract with the MLTC Defendants.

41.     Upon information and belief, the MLTC Defendants reassess the authorization for personal care services and the plan of care at least every six months.

42.     The MLTC Defendants provide and manage services related to the health, social, emotional, nutritional, and rehabilitation needs of senior citizens and other Medicaid patients.

43.     Upon information and belief, the MLTC Defendants operate, in part, by utilizing their own care managers and/or nurses to develop the required care plans so that the needs of senior citizens and patients are met.

44.     Upon information and belief, alternatively, the MLTC Defendants also outsource the functions of care managers and/or nurses to other agencies, including Scharome.

45. Upon information and belief, care managers, nurses and/or their equivalent manage, supervise and coordinate the personal care services provided by Plaintiffs to seniors and other Medicaid patients.

**Relationship Between Defendants**

46. Upon information and belief, the MLTC Defendants maintain a network of providers, like Scharome, to provide adequate access to personal care services.

47. The MLTC Defendants contract with Scharome to assign personal care aides to Medicaid patients who have been authorized for personal care services by the MLTC Defendants.

48. Upon information and belief, the MLTC Defendants require Scharome to assign either one aide to provide "live-in 24-hour personal care services" or two aides to provide "continuous personal care services" across two shifts in a single 24-hour period in accordance with the authorization and plan of care designed by the care managers and/or nurses employed by the MLTC Defendants.

49. Upon information and belief, the MLTC Defendants limit the ability of Scharome to schedule any one personal care aide such that the aide receives overtime pay.

50. Upon information and belief, care managers and and/or nurses employed by the MLTC Defendants also oversee, monitor and assess the performance of the work plans developed for home health aides.

51. Upon information and belief, Scharome must also ensure that personal care aides assigned follow the patient plans of care developed by the MLTC Defendants.

52.     Upon information and belief, the MLTC Defendants pay Scharome a rate per hour per aide to cover wages and other compensation for personal care aides assigned to patients whose personal care services are managed by the MLTC Defendants.

53.     Upon information and belief, for "live-in 24-hour personal care services," the MLTC Defendants only pay Scharome for 13 hours in every 24-hour period.

54.     Upon information and belief, Defendants jointly establish and agree on the compensation paid to personal care aides.

55.     Upon information and belief, all Defendants have the power to terminate the employment of any personal care aide.

56.     Upon information and belief, Defendants also jointly share the various other functions of an employer, including the right to control Plaintiffs' working conditions and job duties.

57.     In essence, the personal care aides are a pool of employees available and necessary to the operations of all Defendants.

58.     The Plaintiffs' work was performed in the normal course of the Defendants' businesses and was integrated into the businesses of the Defendants, who are in the business of providing and managing home care services.

59.     The work performed by Plaintiffs required little skill and no capital investment.

**Plaintiffs' Working Conditions**

60.     From February 2018 to approximately July 2019, Plaintiff Li Z. Feng worked one or two consecutive, 24-hour shifts per week.  During those shifts, Ms. Feng cared for an elderly Medicaid recipient in her eighties who suffered from Alzheimer's disease/dementia and was bedbound.  In accordance with the work plan and patient plan of care, Ms. Feng turned and

repositioned her patient's body at least every one to two hours, including throughout the night. Ms. Feng also helped her patient use a bedside commode approximately five and occasionally as many as eight times per night. Ms. Feng would also change and launder the patient's bedding whenever there were toileting accidents, including during the night.

61.    To sleep, Ms. Feng was provided a twin bed placed in her patient's living room.

62.    Ms. Feng had no regularly scheduled sleep or meal breaks, and never received five hours of continuous, uninterrupted sleep or three hours of completely duty-free meal breaks per shift.

63.    Until December 30, 2018, Ms. Feng was paid $13.00 per hour. From December 31, 2018 until approximately July 2019 when her employment ended, Ms. Feng was paid $15.00 per hour. However, Ms. Feng was only paid for 13 hours out of every 24-hour shift worked.

64.    From approximately May 2017 to approximately March 2018, Plaintiff Yue X. Huang worked alternating weeks of three or four consecutive, 24-hour shifts per week caring for an elderly husband and wife pair who were both approximately ninety years old.

65.    In accordance with the work plan and patient plans of care, Ms. Huang assisted each of her patients with using the commode and/or bathroom between at least two to four times per night.

66.    Ms. Huang was provided a twin bed on which to sleep. The bed was placed in her patients' living room, where a curtain was hung for privacy.

67.    Ms. Huang had no regularly scheduled sleep or meal breaks, and never received five hours of continuous, uninterrupted sleep or three hours of completely duty-free meal breaks per shift.

68.     From approximately March 2019 to June 2019, Ms. Huang worked three consecutive 24-hour shifts per week caring for an elderly woman who was approximately ninety years old.

69.     In accordance with the work plan and patient plan of care, Ms. Huang assisted her patient with using the bathroom approximately three times per night.  At least every two hours throughout the night, Ms. Huang was also required to provide other assistance to her patient.

70.     To sleep, Ms. Huang was provided with a small bed that was pushed up directly against her patient's bed.

71.     During this period, Ms. Huang had no regularly scheduled sleep or meal breaks, and never received five hours of continuous, uninterrupted sleep or three hours of completely duty-free meal breaks per shift.

72.     Until December 30, 2017, Ms. Huang was paid $11.00 per hour.  From December 31, 2017 to December 30, 2018, Ms. Huang was paid $13.00 per hour.  From December 31, 2018 until June 2019, Ms. Huang was paid $15.00.  However, Ms. Huang was only paid for 13 hours out of every 24-hour shift worked.

73.     When Ms. Huang worked four consecutive, 24-hour shifts, Ms. Huang was paid for 52 hours, but only at her regular rate of pay; Ms. Huang did not receive any overtime pay.

74.     From October 2013 until March 2014, Plaintiff Feng X. Liu worked three consecutive, 24-hour shifts per week.  Ms. Liu cared for an elderly man who was approximately ninety years old and lived in a studio apartment he shared with his two adult daughters.

75.     In accordance with the work plan and patient plan of care, Ms. Feng X. Liu assisted her patient with toileting more than five times per night.  Two times per night, Ms. Feng

X. Liu's patient also required assistance with taking over-the-counter remedies. Ms. Feng X. Liu also was required to provide food and drink to her patient during the night.

76.     To sleep, Ms. Feng X. Liu was provided with a small, stowaway bed that was placed alongside her patient's bed and the two stowaway beds of her patient's daughters.

77.     Ms. Feng X. Liu had no regularly scheduled sleep or meal breaks, and never received five hours of continuous, uninterrupted sleep or completely duty-free meal breaks per shift.

78.     Throughout her employment, Ms. Feng X. Liu was paid $10.93 per hour. However, Ms. Liu was paid for only 13 hours out of every 24-hour shift worked.

79.     In 2019, Ms. Feng X. Liu filed a claim with the New York State Department of Labor against Scharome for its failure to pay her the minimum wage for each hour worked, overtime at the appropriate rate for all hours worked in excess of forty per week, and spread of hours pay as well as Scharome's failure to provide a notice of wage statement and full and accurate pay stubs with each payment of wages.

80.     From September 2015 until approximately December 2015, Plaintiff Yu P. Liu worked three consecutive, 24-hour shifts per week caring for an elderly woman in her eighties who suffered from Alzheimer's disease/dementia.

81.     In accordance with the work plan and patient plan of care, Ms. Yu P. Liu was required to change her patient's diaper between three and five times during the night. Additionally, because Ms. Yu P. Liu's patient did not have control over her toileting functions, Ms. Yu P. Liu was also often required to change her patient's bedding and to wash her patient's body during the night.

82.     The Alzheimer's disease/dementia that Ms. Yu P. Liu's patient suffered from prevented her patient from sleeping at night.  As a result, Ms. Yu P. Liu would often be required to provide other assistance to her patient during the night, including providing her with food and water and massaging her body.

83.     Ms. Yu P. Liu was provided with a sofa bed, placed in her patient's living room, on which to sleep.

84.     During this period, Ms. Yu P. Liu had no regularly scheduled sleep or meal breaks, and never received five hours of continuous, uninterrupted sleep or any completely duty-free meal breaks during her shifts.

85.     From December 2015 until November 2016, Ms. Yu P. Liu worked two consecutive, 24-hour shifts per week; and from November 2016 until June 2017, Ms. Yu P. Liu worked four consecutive, 24-hour shifts per week.  For this entire period, Ms. Yu P. Liu cared for an elderly woman in her nineties who suffered from Alzheimer's disease/dementia.

86.     The Alzheimer's disease/dementia that Ms. Yu P. Liu's patient suffered from prevented her patient from sleeping at night.  Instead, Ms. Yu P. Liu's patient was most active at night – frequently and repeatedly going through the possessions in her home at night.  As a result, Ms. Yu P. Liu was required to clean up after her patient constantly throughout the night.

87.     In accordance with the work plan and patient plan of care, Ms. Yu P. Liu also assisted her patient with toileting between three and four times each night.  Ms. Yu P. Liu would also provide her patient with drinks of water and massages throughout the night.

88.     Ms. Yu P. Liu was provided with a sofa bed, placed in her patient's living room, on which to sleep.

89.     During this period, Ms. Yu P. Liu had no regularly scheduled sleep or meal breaks, and never received five hours of continuous, uninterrupted sleep or any completely duty-free meal breaks during her shifts.

90.     Until December 30, 2016, Ms. Yu P. Liu was paid $10.93 per hour.   From December 31, 2016 until December 30, 2017, Ms. Yu P. Liu was paid $11.00 per hour. However, Ms. Yu P. Liu was only paid for 13 hours out of every 24-hour shift worked.

91.     When Ms. Yu P. Liu worked four consecutive, 24-hour shifts, Ms. Yu P. Liu was paid for 52 hours per week.   Until approximately May 1, 2017, Ms. Yu P. Liu was paid at her regular rate for 40 hours and at an overtime rate of at 1.5 times her regular rate of pay for 12 hours.   After May 1, 2017, Ms. Yu P. Liu was paid at only her regular rate of pay for all 52 hours.

92.     From approximately September 2014 until approximately December 2014, Plaintiff Shao N. Meng worked three consecutive, 24-hour shifts per week.   During this period, Ms. Meng cared for a woman in her nineties who suffered from Alzheimer's disease/dementia.

93.     In accordance with the work plan and patient plan of care, Ms. Meng assisted her patient with toileting every hour, including throughout the night.

94.     When assigned to care for this patient, Ms. Meng was told by a coordinator from Scharome that the patient's eating schedule was very irregular.   Ms. Meng's patient would in fact request meals throughout the night, requiring Ms. Meng to prepare meals and feed her patient until approximately 2 a.m. each night.

95.     Ms. Meng was provided with a twin bed that was placed in her patient's living room on which to sleep.

96.    Ms. Meng had no regularly scheduled sleep or meal breaks, and never received five hours of continuous, uninterrupted sleep or any completely duty-free meal breaks during her shifts.

97.    From March 2015 until March 2018, Ms. Meng worked alternating weeks of three or four consecutive, 24-hour shifts per week caring for an elderly husband and wife pair who were both approximately ninety years old.  From May 2017 until March 2018, Ms. Meng was partnered on this job assignment with Plaintiff Yue X. Huang.

98.    In accordance with the work plan and patient plans of care, Ms. Meng's nighttime duties were around toileting, and Ms. Meng assisted each of her patients with using the commode and/or bathroom between approximately two and four times per night.

99.    Ms. Meng was provided a twin bed on which to sleep.  The bed was placed in her patients' living room, where a curtain was hung up for privacy.

100.    During this period, Ms. Meng had no regularly scheduled sleep or meal breaks, and did not receive five hours of continuous, uninterrupted sleep or three hours of completely duty-free meal breaks per shift.

101.    From May 2018 until approximately July 2018, Ms. Meng worked three consecutive, 24-hour shifts caring for a woman in her sixties who did not require assistance during the night.

102.    Ms. Meng was provided with a twin bed in her patient's living room that allowed her no privacy.

103.    During this period, Ms. Meng had no regularly scheduled sleep or meal breaks and did not receive three hours of completely duty-free meal breaks per shift.

104.    From approximately September 2018 until May 2019, Ms. Meng worked three consecutive, 24-hour shifts.  During this time, Ms. Meng cared for a women in her eighties who did not require assistance during the night.

105.    Ms. Meng was provided a twin bed on which to sleep.  However, the bed was placed immediately adjacent to her patient's bed, and Ms. Meng frequently disturbed by her patient's very loud snoring and sleep-talking.

106.    During this period, Ms. Meng had no regularly scheduled sleep or meal breaks, and did not receive three hours of completely duty-free meal breaks per shift.

107.    Since May 2019, Ms. Meng has worked two consecutive, 24-hour shifts per week. Ms. Meng has been caring for a woman in her seventies who suffers from Parkinson's disease and cannot walk independently.  Ms. Meng's patient lives in a two-bedroom apartment with her daughter-in-law and grandson.

108.    In accordance with the work plan and patient plan of care, between 10 p.m. and 6:45 a.m. each night, Ms. Meng assists her patient with using a bedside commode at least five, and occasionally more than seven, times.

109.    Ms. Meng is provided with a twin bed in her patient's bedroom on which to sleep.

110.    Ms. Meng has no regularly scheduled sleep or meal breaks, and never receives five hours of continuous, uninterrupted sleep or three hours of completely duty-free meal breaks per shift.

111.    Until December 30, 2016, Ms. Meng was paid $10.93 per hour.  From December 31, 2016 until December 30, 2017, Ms. Meng was paid $11.00 per hour.  From December 31, 2017 until December 30, 2018, Ms. Meng was paid $13.00 per hour.  Since December 31, 2018,

Ms. Meng has been paid $15.00 per hour. However, Ms. Meng has only ever been paid for 13 hours out of every 24-hour shift worked.

112.    When Ms. Meng worked four consecutive, 24-hour shifts, Ms. Meng was paid for 52 hours per week. Until approximately May 1, 2017, Ms. Lu was paid at her regular rate for 40 hours and at an overtime rate of 1.5 times her regular rate of pay for 12 hours. After May 1, 2017, Ms. Meng was paid at only her regular rate of pay for all 52 hours.

113.    From approximately September 2013 until approximately October 2019, Plaintiff Mei S. Yuen worked four consecutive, 24-hour shifts per week. Ms. Yuen cared for a woman in her late-eighties who suffered from incontinence.

114.    In accordance with the work plan and patient plan of care, Ms. Yuen was required to change her patient's bladder leakage pads and/or assist her patient in using the bathroom between three to four times each night.

115.    To sleep, Ms. Yuen was provided a twin bed that was placed immediately adjacent to her patient's bed.

116.    Ms. Yuen had no regularly scheduled sleep or meal breaks, and never received five hours of continuous, uninterrupted sleep or three hours of completely duty-free meal breaks per shift.

117.    Until December 30, 2016, Ms. Yuen was paid $10.93 per hour. From December 31, 2016 until December 30, 2017, Ms. Yuen was paid $11.00 per hour. From December 31, 2017 until December 30, 2018, Ms. Yuen was paid $13.00 per hour. From December 31, 2018 until approximately October 2019, Ms. Yuen was paid $15.00 per hour. However, Ms. Yuen was only paid for 13 hours out of every 24-hour shift worked.

118.     Until approximately May 1, 2017, Ms. Yuen was paid overtime at 1.5 times her regular rate of pay, after which time Ms. Yuen was paid at only her regular rate of pay.  Only 13 hours out of every 24-hour shift worked were counted towards overtime accrual.

**Defendants' Recordkeeping and Notice Violations**

119.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

120.     Plaintiffs were not required to keep track of their time, nor to their knowledge, did Defendants utilize any time tracking device that accurately reflected their actual hours worked.

121.     Defendants never provided Plaintiffs with any notification, either in the form of notices or other means, regarding their overtime and wages under the FLSA and NYLL.

122.     Defendants did not provide Plaintiffs with an accurate statement of their wages, as required by NYLL 195(3) and FLSA 211(c).

123.     Defendants did not give any notice to Plaintiffs in English or in Chinese (Plaintiffs' primary language) of their overtime rate of pay, and such other information as required by NYLL §195(1).

**FIRST CAUSE OF ACTION**
**For Failure to Pay Minimum Wage Under the Fair Labor Standards Act**
**(Plaintiffs Feng, Huang, Yu P. Liu, Meng and Yuen)**

124.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

125.     Plaintiffs were employees of Defendants, and Defendants were Plaintiffs' employers, within the meaning of the FLSA.  29 U.S.C. § 203.

126.    Since January 1, 2015, home health aides, including personal care aides, employed by third-party agencies or employers must be paid the minimum wage.  29 U.S.C. § 206; 29 C.F.R. §552.109(a).

127.    Defendants failed to pay Plaintiffs Feng, Huang, Yu P. Liu, Meng and Yuen at the applicable legal minimum hourly wage, in violation of 29 U.S.C. § 206(a).

128.    Defendants' failure to pay Plaintiffs Feng, Huang, Yu P. Liu, Meng and Yuen the lawful minimum hourly wage was willful.

129.    Due to Defendants' FLSA violations, Plaintiffs Feng, Huang, Yu P. Liu, Meng and Yuen are entitled to recover from Defendants, jointly and severally during the periods in which they were employers, Plaintiffs' unpaid minimum wages, liquidated damages, punitive damages, as well as reasonably attorneys' fees, costs of the action and interest.

### SECOND CAUSE OF ACTION
**For Failure to Pay Minimum Wage Under New York Labor Law**

130.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

131.    Plaintiffs are employees within the meaning of NYLL, including but not limited to NYLL §§ 2 and 651.

132.    NYLL requires that employers pay their employees specified minimum hourly wages.  NYLL § 652.

133.    Defendants failed to pay Plaintiffs at the applicable legal minimum hourly wage, in violation of NYLL § 652 and supporting regulations and orders of the New York State Department of Labor.

134.    Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally during the periods in which they were employers, Plaintiffs'

unpaid minimum wages, liquidated damages, as well as reasonable attorneys' fees, costs of the action and interest.

## THIRD CAUSE OF ACTION
### For Failure to Pay Overtime Wages Under the Fair Labor Standards Act
### (Plaintiffs Feng, Huang, Yu P. Liu, Meng and Yuen)

135.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

136.    Plaintiffs were employees of Defendants, and Defendants were Plaintiffs' employers, within the meaning of the FLSA.  29 U.S.C. § 203.

137.    Since January 1, 2015, home health aides, including personal care aides, employed by third-party agencies or employers must be paid overtime compensation at an hourly rate of 150% the minimum wage or regular rate of pay, whichever is greater, for all hours worked in excess of 40 per week.  29 U.S.C. § 207; 29 C.F.R. §552.109(a).

138.    Defendants failed to pay Plaintiffs Feng, Huang, Yu P. Liu, Meng and Yuen overtime wages at an hourly rate of 150% of at least the minimum wage for each hour worked in excess of 40 per week, in violation of 29 U.S.C. § 207.

139.    Defendants' failure to pay Plaintiffs Feng, Huang, Yu P. Liu, Meng and Yuen lawful overtime wages was willful.

140.    Due to Defendants' FLSA violations, Plaintiffs Feng, Huang, Yu P. Liu, Meng and Yuen are entitled to recover from Defendants, jointly and severally during the periods in which they were employers, Plaintiffs' unpaid overtime wages, liquidated damages, as well as reasonable attorneys' fees, costs of the action and interest.

## FOURTH CAUSE OF ACTION
### For Failure to Pay Overtime Wages Under the New York Labor Law

141.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs s if fully set forth herein.

142.    At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

143.    Prior to January 1, 2015, third-party agencies or employers employing home health aides were required to paid overtime compensation at an hourly rate of 150% the minimum wage for all hours worked in excess of 40 per week.  NYLL § 652; 12 N.Y.C.R.R. § 142-2.2; 29 C.F.R. §552.109(a).

144.    Since January 1, 2015, home health aides, including personal care aides, employed by third-party agencies or employers must be paid overtime compensation at an hourly rate of 150% the minimum wage or regular rate of pay, whichever is greater, for all hours worked in excess of 40 per week.   NYLL § 652; 12 N.Y.C.R.R. § 142-2.2; 29 C.F.R. §552.109(a).

145.    Defendants failed to pay Plaintiffs overtime wages at an hourly rate of 150% of at least the minimum wage for each hour worked in excess of 40 per week, in violation of NYLL § 652 and 12 N.Y.C.R.R. § 142-2.2.

146.    Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally during the periods in which they were employers, Plaintiffs' unpaid minimum wages, liquidated damages, as well as reasonable attorneys' fees, costs of the action and interest.

### FIFTH CAUSE OF ACTION
**For Failure to Pay Spread of Hours Under New York Labor Law**

147.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

148.    Plaintiffs were employed by Defendants within the meaning of NYLL, including but not limited to NYLL §§ 2 and 651.

149.    Employees are entitled to receive one hour's pay at the basic minimum wage rate for any day in which the spread of hours exceeds 10 hours.  12 N.Y.C.R.R. § 142-2.4.

150.    Defendants failed to pay Plaintiffs spread of hours pay each day Plaintiffs worked a spread of hours in excess of 10 hours.

151.    Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally during the periods in which they were employers, Plaintiffs' unpaid spread of hours pay, liquidated damages, as well as reasonable attorneys' fees, costs of the action and interest.

### SIXTH CAUSE OF ACTION
**For Unlawful Violation of the Record-Keeping Provisions of the Fair Labor Standards Act**

152.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

153.    Defendants were required to keep track of the hours worked by Plaintiffs including any periods of time that were free and clear of duties and therefore not compensable pursuant to the FLSA's recordkeeping requirements as set forth in 29 U.S.C. § 211(c).

154.    Defendants failed to track the time spent working, time spent engaged to wait and/or Plaintiffs' sleep or meal breaks, in violation of FLSA, § 215(a)(5).

155.   Due to Defendants' FLSA recordkeeping violations, Plaintiffs are entitled to injunctive relief as this Court deems appropriate, together with costs and reasonable attorneys' fees pursuant to FLSA § 217.

## SEVENTH CAUSE OF ACTION
### For Failure to Comply with Notification Requirements and to Maintain Records Under York Labor Law

156.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

157.   Defendants failed to comply with NYLL § 193, which sets out notice and recordkeeping requirements governing employers in the State of New York, and 12 NYCRR § 142-2.6 governing the records that Defendants are required to maintain and preserve.

158.   Defendants failed to provide Plaintiffs with a wage notice in English and/or Chinese setting forth Plaintiffs' rate of pay, the basis for determining that rate, and any allowances claimed against Defendants' minimum wage obligations, in violation of NYLL § 195(1)(a).

159.   Due to these violations, Plaintiffs Feng X. Liu, and Mei S. Yuen are entitled to recover from Defendants, jointly and severally during the periods in which they were employers, $50 for each workweek that the violations occurred, up to a total of $2,500 per Plaintiff, together with costs and reasonable attorneys' fees and any other relief that this Court deems necessary and appropriate.  NYLL § 198(1-b).

160.   Plaintiffs Feng, Huang and Yu P. Liu are entitled to recover from Defendants, jointly and severally during the periods in which they were employers, $50 for each workday that the violations occurred, up to a total of $5,000 per Plaintiff, together with costs and reasonable

attorneys' fees and any other relief that this Court deems necessary and appropriate.  NYLL §
198(1-b).

161.    Defendants also failed to provide Plaintiffs with detailed and accurate wage
statements with each payment of wages, in violation of NYLL § 195(3).

162.    Due to these violations, Plaintiff Feng X. Liu is entitled to recover from
Defendants, jointly and severally during the periods in which they were employers, $100 for
each workweek that the violations occurred, up to a total of $2,500, together with costs and
reasonable attorneys' fees and any other relief that this Court deems necessary and appropriate.
NYLL § 198(1-d).

163.    Plaintiffs Feng, Huang, Yu P. Liu, Meng, and Yuen are entitled to recover from
Defendants, jointly and severally during the periods in which they were employers, $250 for
each workday that the violations occurred, up to a total of $5,000 per Plaintiff, together with
costs and reasonable attorneys' fees and any other relief that this Court deems necessary and
appropriate.  NYLL § 198(1-d).

164.    In light of Defendants' longstanding and ongoing violations of the New York
Labor Law and applicable regulations with respect to notice and recordkeeping, Plaintiffs also
seek injunctive relief precluding Defendants from continued violations of these laws and
affirmatively mandating their compliance with the provisions of the NYLL.

### EIGHTH CAUSE OF ACTION
**For Failure to Pay Wages as Required by the
New York Home Care Worker Wage Parity Act**

165.    Plaintiffs reallege and incorporate by reference all allegations in all preceding
paragraphs as if fully set forth herein.

166.    Pursuant to the Wage Parity Act, N.Y. Public Law § 3614-c, and state contractual obligations, Defendants were required to certify and did certify that it paid Plaintiffs wages and/or wage supplements as specified by the Act.

167.    The agreements to pay Plaintiffs as required by the Wage Parity Act were made for the benefit of Plaintiffs.

168.    By failing to pay Plaintiffs for each hour worked, Defendants breached their obligations to pay Plaintiffs all wages they were due as required by the Wage Parity Act and caused injury to Plaintiffs.

169.    Plaintiffs, as third-party beneficiaries of Defendants' contracts with NYS DOH to pay wages as required by the Wage Parity Act, are entitled to relief for this breach of contractual obligation plus interest.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs respectfully request that a judgment be granted as follows:

(a)    Declaring Defendants' conduct complained of herein to be in violation of Plaintiffs' rights under the FLSA, NYLL and New York common law;

(b)    Awarding Plaintiffs unpaid minimum wages and overtime wages due under the FLSA, NYLL and New York common law;

(c)    Awarding Plaintiffs spread of hours pay under NYLL;

(d)    Awarding Plaintiffs damages due to notice pay rate violations under NYLL;

(e)    Awarding Plaintiffs damages due to wage statement violations under NYLL;

(f)    Awarding Plaintiffs liquidated damages;

(g)    Awarding Plaintiffs pre-judgment and post-judgment interest;

(h) Awarding Plaintiffs the cost of this action, together with reasonable attorneys' fees;

(i) Issuing an injunction precluding Defendants from continuing to violate the recordkeeping and notification requirements of the FLSA and NYLL; and

(j) Awarding such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury in this action of all issues so triable.

Dated: New York, New York
March 6, 2020

Respectfully submitted,

KASOWITZ BENSON TORRES LLP
Mark W. Lerner (mlerner@kasowitz.com)
Joshua D. Fulop (jfulop@kasowitz.com)
Jonathan L. Shapiro (jshapiro@kasowitz.com)
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700

THE LEGAL AID SOCIETY
Carmela Huang (chuang@legal-aid.org)
Lizbeth Schalet (lschalet@legal-aid.org)
199 Water Street, 3rd Floor
New York, New York 10038
Tel: (212) 577-3300