# KASOWITZ BENSON TORRES LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019

(212) 506-1700

FAX: (212) 506-1800

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

MARK W. LERNER
DIRECT DIAL: (212) 506-1728
DIRECT FAX: (212) 835-5028
MLERNER@kasowitz.com

December 2, 2021

**BY ECF**

The Honorable John P. Cronan
United States District Court
Southern District of New York
500 Pearl Street, Room 1320
New York, NY 10007

     Re:    *Feng et al v. ElderPlan, Inc., et al.*,
             20-CV-2049 (JPC) (JLC)

Dear Judge Cronan:

Kasowitz Benson Torres LLP and The Legal Aid Society represent Plaintiffs in the above-captioned action (the "Action").  Defendant Scharome Cares, Inc. ("Scharome") is represented by Nixon Peabody LLP and defendant Elderplan, Inc. ("Elderplan") is represented by McGuireWoods LLP.  Plaintiffs submit this letter motion, which is submitted jointly with Defendants' counsel, seeking approval of the parties' negotiated settlement of Plaintiffs' claims pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and in accordance with Rule 3.G of the Court's Individual Rules and Practices in Civil Cases.

## I.     PROPOSED SETTLEMENT

The parties completed discovery in this Action on July 23, 2021, and advised the Court by joint letter dated July 30, 2021 (ECF No. 78) that, before they engaged in briefing on summary judgment, they desired to attempt to resolve Action by private mediation.

On October 28, 2021, the parties attended a private mediation at JAMS facilitated by mediator Marc E. Isserles, Esq., and reached an agreement to settle the Action in principle. Plaintiffs have agreed to accept, and Scharome has agreed to pay, $600,000 to fully and finally settle the matter with a release of all claims in the Action.  The parties have memorialized and executed their proposed agreement, which all parties agree is in their best interests, in <u>Exhibit 1</u> submitted herewith.

Kasowitz Benson Torres llp

The Honorable John P. Cronan
December 2, 2021
Page 2

## II.    THE PARTIES' RESPECTIVE CLAIMS AND DEFENSES

### A.    Plaintiffs' Position in the Lawsuit

Plaintiffs assert that they were employed jointly by Scharome and Elderplan to work as live-in, 24-hour home health aides to Defendants' customers, who were elderly and infirm Medicaid patients. Plaintiffs contend that throughout their shifts, they worked almost continuously, assisting their patients with all activities of daily living, including toileting, walking, eating and drinking, dressing, cleaning, turning and positioning, transferring and safety monitoring. Plaintiffs assert they had only minimal opportunities for rest because their patients required constant attention throughout the day and night. If Plaintiffs slept, it was inconsistent, interrupted and often at their patients' bedsides or in their living rooms.

Plaintiffs claim that Defendants were required to pay Plaintiffs for all 24 hours for each of their shifts, unless Plaintiffs had regularly scheduled sleep and meal breaks and actually received eight hours of sleep each night (five of which were continuous and uninterrupted) and three hours of completely duty-free meal breaks. Plaintiffs assert that, instead, Scharome paid Plaintiffs for only 13 hours of work per 24-hour shifts, even though Defendants knew that Plaintiffs were not getting the requisite hours of sleep and meal breaks and that Plaintiffs' patients could not be cared for safely and properly by Plaintiffs without around-the-clock attention and monitoring. As a consequence, Plaintiffs allege, they were paid less than the minimum wage required by both state and federal labor laws, were systemically deprived of overtime and took home weekly earnings that were less than half of what they were actually owed. Additionally, Plaintiffs assert that Defendants failed to compensate Plaintiffs at the minimum compensation level required by the New York Home Care Worker Wage Parity Act ("Wage Parity Act"). Plaintiffs also alleged additional violations of the New York Labor Law ("NYLL") due to their assertion that Defendants' failure to pay spread-of-hours pay when Plaintiffs worked shifts in excess of 10 hours and to provide complete and accurate statements describing Plaintiffs' rate and basis of pay upon hire and with each payment of wages.

### B.    Defendants' Positions in the Lawsuit

Scharome disputes Plaintiffs' factual allegations and interpretation of the law. Scharome asserts that, pursuant to guidance from the New York Department of Labor, 11 hours were lawfully deducted from Plaintiffs' compensable hours for each shift because (1) Plaintiffs agreed to the arrangement by signing documentation requiring them to notify Scharome if and when they worked more than 13 hours on any shift and (2) Plaintiffs were able to, and did, receive the requisite sleep and meal breaks. Scharome further asserts that they had neither actual nor constructive knowledge of Plaintiffs' purported work in excess of 13 hours because Plaintiffs never notified Scharome that they worked more than 13 hours per shift. Scharome contends that it fully complied with the law in all respects, including by paying Plaintiffs "spread of hours" wages and wages consistent with the Wage Parity Act.

# Kasowitz Benson Torres llp

The Honorable John P. Cronan
December 2, 2021
Page 3

Elderplan disputes Plaintiffs' characterization of Elderplan as a joint employer and their interpretation of the law. Elderplan contends that the totality of the circumstances surrounding the economic relationship between Scharome and Elderplan shows no joint-employer relationship between the two and no basis upon which Elderplan could be liable for any unpaid wages, damages, interest, or attorneys' fees due to Plaintiffs. Elderplan asserts that it is a not-for-profit Health Maintenance Organization ("HMO") insurance company that offers Medicare and Medicaid products including Medicare Advantage and Managed Long-Term Care plans ("MLTCPs"). It is uncontroverted that it pays licensed home care services agencies ("LHCSA"), such as Scharome, which provide covered services for its insureds, whom it calls "members." Elderplan asserts that the evidence is uncontroverted that it: (1) does not control the hours, methods, terms, or conditions of Plaintiffs' employment; (2) does not pay Plaintiffs; (3) does not have the power to hire, fire, or discipline them; (4) does not create or keep Plaintiffs' personnel records; (5) does not supervise Plaintiffs' work; and (6) has no direct contact with Plaintiffs. Elderplan further contends that the facts that, (1) none of its premises or equipment was used for Plaintiffs' work, (2) Plaintiffs' did similar work for members of other HMO, (3) Plaintiffs' work was not part of Elderplan's business, and (4) Plaintiffs' work for Elderplan's members was contingent upon Elderplan's contracting with Scharome, are all further evidence that it was not Plaintiffs' joint employer. Thus, it contends that it is not liable for any amounts to Plaintiffs.

## III.    THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE

While the parties continue to differ in their respective positions as to the claims alleged in the Amended Complaint, the parties have agreed to settle this matter in recognition of the risks and costs associated with continued litigation. Pursuant to their settlement agreement (Exhibit 1), Scharome will pay Plaintiffs $600,000 within 14 days of the agreement's effective date. Following Scharome's full payment, Plaintiffs' attorneys will file a fully-executed stipulation discontinuing this matter with prejudice. Plaintiffs will also release Defendants from any and all wage-related claims related to Plaintiffs' employment by Defendants. Of note, although Plaintiffs have agreed to release Elderplan from its claims and Elderplan is not paying any portion of the $600,000, Scharome has conditioned its payment of the $600,000 to Plaintiffs on their release of Elderplan and their dismissal of the Action in its entirety with prejudice. Each party will bear their own attorneys' fees and expenses, except that Scharome will pay Kasowitz Benson Torres LLP for Plaintiffs' share of the fees related to the October 28, 2021 mediation. ***Moreover, and significantly, Plaintiffs' counsel have waived all fees and costs related to this matter, and the entire settlement amount (net of any applicable taxes) will be paid directly to Plaintiffs themselves.***

The settlement of $600,000 is an amount equivalent to: (1) all of Plaintiffs' unpaid minimum wage and overtime damages based on Plaintiffs' actual rate of pay pursuant to the Fair Labor Standards Act and NYLL for *all* 24 hours of *every* day of *every* shift worked; (2) the total amount of all minimum compensation due pursuant to the Wage Parity Act for the additional 11 hours per shift that were not credited by Scharome as compensable hours; and (3) approximately 20% in liquidated damages. Plaintiffs have calculated that their lost wages, including overtime,

# Kasowitz Benson Torres llp

The Honorable John P. Cronan
December 2, 2021
Page 4

totals $441,434, as detailed in the documents submitted herewith as <u>Exhibit 2</u> and <u>Exhibit 3</u>.[1] That figure assumes that Plaintiffs would recover for a full 24 hours worked for each and every live-in shift they worked; however, one of the risks Plaintiffs face in this litigation is the possibility that the fact-finder will not credit Plaintiffs' position that every shift (or *any* shift) they worked was one for which they should be paid for 24 hours. For its part, Scharome disputes that position and at trial would offer competing testimony from its own witnesses, including from Plaintiffs' supervisors, for the proposition that Plaintiffs were provided with breaks and did not complain about missing them.[2] A jury may therefore determine that Plaintiffs are entitled to recover only some or even none of the lost wages Plaintiffs claim they are owed. Plaintiffs and their counsel believe that this risk argues strongly in favor of settlement on the terms presented.[3]

At trial, and as shown in Exhibit 2, Plaintiffs also would seek additional damages for spread of hours pay, violations of the NYLL's notice requirements, violations of the Wage Parity Act, liquidated damages and pre-judgment interest.[4] However, Scharome asserts that it will provide evidence refuting Plaintiffs' entitlement to these damages, including evidence showing that (i) Plaintiffs were paid for their spread of hours, (ii) Plaintiffs were provided with the notices of their pay rate in compliance with the NYLL, (iii) Plaintiffs were paid wages in compliance with

---

[1] Plaintiffs retained an expert (Stout Risius Ross, LLC ("Stout")), which reviewed the documentation produced during discovery (including caregiver calendars and pay stubs) and analyzed Plaintiffs' damages assuming that each Plaintiff worked 24 hours for all shifts. Stout's summary is attached as <u>Exhibit 2</u>, which shows that Plaintiffs' total potential damages – if they were to prevail on all of their legal claims and theories – would be $1,649,104. As shown in the third column of the first row of that exhibit, Stout determined that Plaintiffs' lost wages total $441,434. <u>Exhibit 3</u> shows how Stout calculated the lost wages amount for each Plaintiff individually, based on their respective shifts, hours worked, and pay rates (*see* "Cumulative Wages Owed" column, with yellow highlighting indicating each Plaintiff's total lost wages). Under the Settlement Agreement, the $600,000 will be allocated to each Plaintiff in amounts equal to their respective percentage of lost wages that comprises the $441,434. (*See* <u>Exhibit 1</u>, ¶¶ 1(a)–1(g).)

[2] At trial, Plaintiffs would testify that the documents they signed at the beginning of their employment with Scharome requiring them to report all work in excess of 13 hours was not presented to them in English and never translated to them in Chinese. However, Scharome's witnesses will testify that the documentation was translated to them in Chinese.

[3] The settlement includes a $27,000 payment for Plaintiff Feng X. Liu. Scharome has asserted that Ms. Liu's claims are time-barred. Although Ms. Liu contends that she filed a claim with the New York Department of Labor which tolled the applicable statute of limitations, she did not produce any corroborating documentation during discovery to support that contention, which is another risk Plaintiffs and counsel have considered.

[4] Plaintiffs' calculation of additional damages in the amount of $516,637 for purported violations of the Wage Parity Act assumes that their rate of pay for overtime damages should be based on the minimum compensation rate provided by the Wage Parity Act. No court in the Second Circuit has yet endorsed that assumption.

# KASOWITZ BENSON TORRES LLP

The Honorable John P. Cronan
December 2, 2021
Page 5

the Wage Parity Act, and (iv) Plaintiffs are not owed any liquidated damages because they sustained no damages at all.[5]

Scharome has also raised questions regarding its ability to pay a larger award than the negotiated settlement presented herein.

Based on the risks of litigation, consideration of Scharome's ability to pay, and the cost and risks of Defendants' anticipated summary judgment motions, Plaintiffs believe the settlement amount presented here is a reasonable figure, particularly given that it covers all unpaid wages claims, including for hours worked, overtime rates, Wage Parity Act shortfalls, and some liquidated damages. A settlement also allows Plaintiffs to avoid the inconvenience of the litigation process and any variables that may bear on the process with the passage of time.

The proposed settlement is the product of arms-length bargaining among experienced counsel at a mediation. Plaintiffs were represented at the mediation by experienced litigators from Kasowitz Benson Torres LLP and The Legal Aid Society who have been handling this matter pro bono and seek no fees in connection with the settlement. Defendants were represented by experienced counsel from Nixon Peabody LLP and McGuireWoods LLP. All negotiations were facilitated by an experienced JAMS mediator, Mr. Isserles.

## IV.    **CONCLUSION**

Accordingly, for the foregoing reasons, the parties respectfully request that the Court approve the proposed settlement agreement annexed as <u>Exhibit 1</u> as it contains fair, adequate and reasonable terms as set forth above, and further request permission to thereafter submit the stipulation of dismissal with prejudice annexed as exhibit A thereto for the Court to so-order.

We thank the Court for its consideration of these requests.

Respectfully submitted,

Mark W. Lerner

cc:    All Counsel of Record (by ECF)

(Attachments)

---

[5] The Parties do not believe that the Court should include pre-judgment interest when assessing the fairness of this settlement. *See, e.g., Ortiz v. My Belly's Playlist LLC*, No. 16 Civ. 2924, 2018 WL 1918611, at *3 (S.D.N.Y. Apr. 19, 2018) (assessing settlement exclusive of pre-judgment interest); *Romero v. Fluff N Fold Laundry Servs. LLC*, No. 15 Civ. 9535, 2018 WL 2768642, at *2 (S.D.N.Y. June 8, 2018) (same).